## C. CROSS v. MARTHA PHILLIPS, et al.

Eastern Section. ———— ——, ——.

E. G. Foster and Charles H. Davis, for appellant, C. Cross. Horace M. Carr, H. K. Pemberton and J. C. Williams, for appellee, Martha Phillips.

SNODGRASS, J. An ejectment bill originally involving three tracts of land. Complainant recovered the first and second tract described in his bill except three or four acres which was agreed to be not in controversy in the suit. But as to third tract or 77 and ⅞ acres, it was held that complainant, C. Cross, had failed to make out his claim of title to the 3rd tract of land set out and described in the hill; making the following written findings of fact in relation thereto:

"In this case I have come to the conclusion that complainant's bill should be dismissed for the following reasons: First the complainant has failed to make out his claim of title, the deed of John M. Cordell, Adm. of W. W. Cotton, deceased being insufficient to convey title. Second, because the plea of champerty filed by defendants has been sustained by the proof.

"The foregoing finding has reference to the third tract described in the bill, it being agreed in open court that there is no controversy now about first and second tract sued for.

"The complainant will pay one-half the cost of the cause and the defendant one-half."

Accordingly the bill was dismissed as to the said third tract; from which decree the complainant has perfected an appeal making the assignment that "the court erred in finding and decreeing that the complainant failed to make out his claim of title to the third tract of land set out and described in the bill in this cause, because of the fact that the deed of John M. Cordell, Admr. of W. W. Cotton, deceased, was insufficient to convey title."

II.

"The court erred in holding that the deed from John M. Cordell, Admr. of W. W. Cotton, deceased, was champertous."

III.

"The court erred in taxing the complainant with any of the costs of the cause."

Our examination of the record leads us to the conclusion that the chancellor's decree dismissing the bill as to the said third tract should be affirmed. The complainant claims this tract through the said W. W. Cotton, deceased, by a chain of title which they exhibit finding its origin in him while the defendants claim the tract as heirs of their mother Martha Phillips, deceased, who claimed it during her lifetime as a daughter and heir of the said W. W. Cotton, deceased. Both therefore claim through a common source.

The said W. W. Cotton was the owner of a number of tracts at his death and these are set out in the answer of Martha Phillips as descriptive of the tracts and as source from which they were obtained and forming color of title under which she insists she has maintained actual possession of the tract in question.

It appears that the third tract mentioned in her answer is the one that covers the third tract in question under the appeal in this case and appears to be a grant issued by the State of Tennessee, No. 29560 to the said W. W. Cotton in the year 1856.

She claims her father died in 1863 and that with her husband, James Phillips, she moved upon the land in 1866 and has continued to reside thereon or to have exclusive possession thereof up until the time of the filing of her answer December 1, 1924; claiming same as heir of her father.

The defendant died during the pendency of the suit and the cause was revived against her heirs, two of whom had been made parties to the original bill, as claiming other tracts than the one now in dispute with reference to which while they at one time claimed it they say they relinquished to their mother who had maintained the possession thereon; but set up claims to the two other tracts.

Defendant Laura Phillips answered disclaiming any interest in the land other than as tenant or agent of Martha Phillips maintaining a possession which it was claimed had been invaded by complainant

Cross; but which she had finally won in the courts in a forcible entry and detainer proceedings involving possession of the land by the failure of the said Cross to perfect an appeal from the judgment of the court and jury in her favor.

After the death of their mother the two heirs originally made parties together with E. C. Phillips and Nancy Phillips filed an answer to the amended bill claiming as heir of their mother all her interest in the tract in question.

Defendant challenges the conveyance of the land by John B. Cordell as administrator of W. W. Cotton the common ancestor to John C. and Celina Wilhite; as without support of any record clothing such administrator with any power to convey the tract; which evidently conveys the 77 and $\frac{5}{8}$ acres and the 40 acres that was lost as comprehended in the recovery unappealed from.

We have examined such parts of the record that remains in the county court which was certified to this court. We are of opinion that it is without sufficient recitals to support the deed made by the administrator under its supposed sanction and authority and that the deed is therefore void.

The Statute indeed authorizes, at the suit or application of an administrator, a resort to the county court to sell land for the payment of debts. But it specifies and enumerates the facts essential to warrant the exercise of that jurisdiction when so invoked as follows:

"1. That the personal assets have been exhausted in the payment of debts, (2) leaving just debts against the estate unpaid; and forbids the entering of any decree for the sale of land until it shall be made satisfactorily to appear (1) that the personal estate has been exhausted in the payment of bona fide debts, or (2) that the debts for which the sale is sought are justly due. Unless these facts appear in the bill or petition and are adjudged or assumed in the decree, the sale will be held void on collateral attack. Sizer's Pritchard on Wills and Executors, page 960, sec. 814.

But if the petition alleges the facts required by the statute and the decree states them to have been made out to the satisfaction of the court and assumes them as its basis and the grounds of the sale, and the court otherwise has jurisdiction of the parties and the subject matter, you cannot in a collateral proceeding attacking the sale, look beyond the pleading and decree to see if the proceedings were formal and the decree based upon the proper evidence." Ib. same section, page 961.

The heirs must be made parties which does not appear from the record to have been done.

All that appears of the County Court record supposedly authorizing the administrator to sell the land of the decedent is the transcript certified by the clerk of the County Court and found in the record

pages 24, 25 & 26; and it shows nothing more than a report for confirmation of various tracts of land sold to different individuals; and reported to the March term, 1870, under the following caption, after styling the case as John M. Cordell, Admr. & Executor v. The Heirs at Law of W. W. ·Cotton, deceased: "Came the plaintiff and submitted a report of a sale of certain lands made in obedience to an order heretofore made by this court, in this case, which report is in the words and figures to-wit."

Then follows a statement of different tracts sold by him to different individuals with the divesting and vesting of title and confirming the sales, vesting with power and directing the administrator to make deeds to the purchasers; or if deeds had been executed ratifying the same; declaring them valid concluding with "And satisfactory reasons appearing to the court the order of sale heretofore made in this case be and the same is hereby revived so as to include and apply to any and all lands belonging to said estate remaining unsold."

Then at the March term, 1871, a similar report was made with a variation in the recital to be that, "The administrator produced the following report of sales of real estate which are in the words and figures as follows to-wit: The Hon. J. J. Duncan, Judge of the Scott County Court, presiding at Huntsville, Tennessee. · For said Court: By virtue of a decree of your worshipful court heretofore pronounced in this case I have sold the following described real estate, all lying in Scott County, State of Tennessee to-wit:"

Then followed a description of various tracts; one to James Sharp of 100 acres; one to John C. Wilhite of 600 acres; one to James Phillips, being Cotton's interest in a boundary containing by estimation 300 acres; and the 4th to John C. and Celina Wilhite-Cotton's interest in a certain boundary containing by estimation 100 acres lying in the 2nd Civil District of said County and State in the Gap of Buffalo Mountain and known as the Liz Angel place, and for a more particular description of said tracts or parcels of land reference was made to the several deeds made by him to the parties.

Confirmed in practically the same terms as the former sales.

At the same time it was recited that, "The clerk of this court produced in open court the settlement of John M. Cordell, administrator of Wayne W. Cotton deceased, which was duly approved by the court and ordered to be spread of record by the clerk." Also that, "came John M. Cordell, administrator of W. W. Cotton, deceased, and filed his resignation as such administrator and if appearing to the satisfaction of the court that said administrator has made full settlement as such of his liabilities towards said estate, the court is pleased to order that said resignation be accepted to take effect from this day,"

As stated, the Chancellor did not think these proceedings sufficient to support authority for the sales of these various tracts of land by the administrator and in this conclusion we concur. The record does not show the heirs to have been before the court neither does it show an establishment of any of the prerequisites authorizing a sale of the land; nor in this particular is there any presumption to be indulged sustaining the validity of the county court's action. 2 Head, 257; see also citing the second Head case, 1 Baxter, 310, 1 Heiskell, 726, 1 Head, 128, 10 Heiskell, 223, 5 Lea, 513, 10 Lea, 217, 14 Lea, 24.

It is insisted however that subsequent to these deeds made by virtue of the supposed authority of the County Court, such proceedings have been had in the case of James Phillips and his wife, Martha Phillips, Polly W. Cotton and Tasman W. Cotton v. John M. Cordell, as an individual and as Administrator of W. W. Cotton, China Cordell wife of John M. Cordell, Francis Cotton and Celina Cotton and John C. Wilhite her husband and Walker C. Cotton; brought in the Chancery Court at Huntsville on December 6, 1880, and determined in said case, as that the defendant Martha Phillips was estopped to deny the validity of the deed of the administrator; and that the questions sought now to be urged against the validity of the deed covering the tract in question by this appeal, are all res adjudicata and made so by that case.

But our examination of the record in that case, leads us to a different conclusion. For the bill in that cause, while mentioning the alleged sales of the decedent's real estate by the administrator and averring grounds inimical to their validity; especially reserved the question of their attack; and sought an accounting against the administrator, and to open his settlements and a disclosure as to the true situation of his accounts; which information was essential to a determination of the question of the advisability of testing the validity of the sales under a bill framed and with proper parties to that end.

The bill was dismissed on April 3, 1885, under the adjudication that the answer had denied all the equities alleged by complainants and that complainants has wholly failed to sustain the allegations of the bill; which was therefore dismissed.

So far as the title to the lands conveyed under these deeds of the administrator is concerned, we do not think that question was so far determined in said Chancery cause as to preclude their determination in this cause which directly involves the validity of at least some of these deeds and at least the deed from John M. Cordell, administrator, of the said W. W. Cotton, deceased to John and Celina Wilhite dated May 27, 1870, which covers the 3rd tract described in the bill and in issue by this appeal.

It appears that this deed attempted to convey the lands to John C. and Celina Wilhite during their lives, and at their death to Wayne Walford, French Houk Brown and Jerimiah Tasman Brown.

After the death of John C. Wilhite, some of these remaindermen conveyed their interest to James Sharp and others to James Phillips. who died leaving whatever interest he acquired under that source to his heirs.

The said James Sharp in 1903, filed a bill in the Chancery Court cf Scott County against these heirs; Isaac R. Phillips, French Phillips, Nancy Emiline Phillips and Ephraim Phillips, alleging that he was the owner of the two-thirds undivided interest subject to the life estate of Celina Wilhite in the lands then being or covering same lands set out in the 3rd tract in the bill in this cause and as the 3rd tract in the answer of Isaac R. and French Phillips and that James Phillips was the owner of a one-third interest together with the life estate of Celina Wilhite and averring their common source of title; seeking to sell for division or to partition the tract among the alleged tenants in common. Seeking also a decree for timber cut and removed by defendants.

These defendants answered denying the common source and denying any title in complainant, claiming outstanding title. There were several issues between complainant Sharp and the heirs of James Phillips especially with reference to a deed that had been made to James Phillips their father subsequent to one having been made to complainant regarding this land. But suffice it to say that contention of complainant was finally sustained and adjusted except that the lands were partitioned in kind and the first tract described in the partition decree as 77⅗ acres being the said third tract in issue by the appeal in this cause was allotted to complainant James Sharp, and the other moiety as 46 & ⅗ acres was allotted to the defendants as the heirs of James Phillips.

It is to be observed that Martha Phillips, who has claimed the land as heir at law of W. W. Cotton deceased, was not made a party to this proceeding. Whatever might have been the results of that litigation, had defendant, under the claim of their mother, appealed, it did not foreclose any claim of the mother, not a party to the suit, and not claiming under any deed to her husband James Phillips. It appears from the proof that while her husband sought through these void transactions of deeds to possess himself personally of portions of what his wife's father died seized and possessed of, unless it be found that she has so conducted herself in relation thereto as to estop her from questioning the transactions, such inheritable right descended to her at the death of her father as would afford color of title to the tract now in question and would authorize her to take possession of the same and hold it to her advantage and

protection if such has been the case. Nor is it material here and now to inquire if that possession resulted to her advantage alone, or as to whether or not it inured to the advantage of other heirs at law of the said W. W. Cotton. She was on the defensive in this action; and complainant must recover, if at all, upon the strength of his own title, in the record chain of which there is, as indicated, such an infirmity as does not legally connect him with the deceased as far as it concerns the third tract described in the bill and involved in this appeal.

It does not appear from the proof that there has been such an actual possession maintained by him or his antecedents in the chain as that independent of a reliance upon a perfect chain, title has been perfected under any statute of limitations to the particular tract in question, whereas, it was claimed in the answer of Martha Phillips which was sworn to that she and her husband moved on the land in 1866; and that she had continued to live there ever since claiming as heir of her father.

Her son, I. R. Phillips, 60 years old when he testified, said his mother was living on the land when he was four years old; and that it had been his permanent home ever since he could remember at four years of age. That it was within the James Williams grant; and that his mother had been in the peaceable possession of the premises and home since he could first remember at the age of four years and down to the time of her death except in one instance when Mr. Cross entered in on the premises one time there and took possession of part of the field in June 6, 1923, that is one of the fields in the southeast there in the Williams grant; but that his mother and the children that lived with her continued to occupy the home in which she was living at the time the possession was entered by Mr. Cross; that his mother and the children during the lifetime of their father, and since his death continued to live in the home, his mother claiming it as heir of her father Wayne W. Cotton and that she so continued to live there and so claim up to the date of her death. He testified as to a tenant house at another place, where Laura Phillips lived as tenant and continued to live. To the same effect was the testimony of French and E. H. Phillips; and regarding the attempted possession by Cross, while it may cut no other figure in the law suit, his attempt was successfully resisted and he was removed under an action of forcible and unlawful entry and detainer referred to in the record; which serves to illustrate the origin and validity of the actual possession being maintained at the time; though it might not avail as conclusive against the recovery of possession by a suit testing his right thereto in ejectment where title is involved.

We think it reasonably appears from the proof that Mrs. Phillips was in actual possession of the land with house and extensive enclosures as it appears when John M. Cordell was appointed administrator and at most upon a mere suggestion of a necessity therefor and so far as the record shows without bringing any of the heirs before the court under a supposed authority began the sale and transfer of numerous tracts of land for any purpose that might have been conceived by him as desirable.

The fact of this adverse possession being maintained as affecting the particular tract now in dispute, has affected all the deeds executed since such adverse possession with Champerty and we think the Chancellor was correct in so holding and the abortive attempt of her husband to so acquire title in himself to any part of the land covered by the tract now in issue we do not think has or should estop her to make her long and continued possession of this tract as an heir of her father, a sufficient defense against this action which tries title. The administrator's deed to J. C. & Celina Wilhite for life and to the stated remaindermen did not convey any title and consequently there was none to be communicated by them to th heirs or vendees, nor to create an interfering life estate in so fa· as the same affected the particular land now in question; nor is tnere any efficacy in the claims that certain cross-ties were successfully replevied from Mrs. Phillips by complainant to render the questions involved in this lawsuit res adjudicata as aiding complainant's claim.

The right of ousting Mrs. Phillips from her present possession was not involved in that law suit; but only title to the cross-ties which for reasons other than lack of title might have been abandoned to the plaintiff; but which did not involve the surrender of her home.

Upon the whole we agree with the conclusions reached by the Chancellor. All assignments are overruled; and his decree is affirmed in all particulars save that the costs of this court will be paid by appellant and his securities.

Portrum and Thompson, JJ., concur.